UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

=====================================================================

**CASE NO.:** CV 14-07155 SJO (JPRx)     **DATE:** March 2, 2015

**TITLE:** Linda Rubenstein v. The Neiman Marcus Group LLC, et al.

=====================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                         Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**     **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                  Not Present

=====================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** [Docket No. 25]

This matter comes before the Court on Defendant The Neiman Marcus Group LLC's ("Defendant" or "Neiman Marcus") Motion to Dismiss Case ("Motion"), filed on January 6, 2015. Plaintiff Linda Rubenstein ("Plaintiff") submitted an Opposition to Defendant's Motion ("Opposition") on January 15, 2015, to which Defendant replied ("Reply") on January 26, 2012. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for February 9, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Defendant's Motion.

I.     FACTUAL AND PROCEDURAL HISTORY

In this putative class action suit, the Complaint makes the following allegations. Plaintiff is a citizen and resident of California who purchased two items of clothing from the Neiman Marcus Last Call Store ("Last Call") in Camarillo, California, that was purportedly sold for markedly lower than the "Compared to" price that a consumer would pay at traditional Neiman Marcus retail stores. (First Am. Compl. ("FAC") ¶ 1.) Defendant is a Delaware limited liability company, with its principal place of business in Irving, Texas, that markets, distributes, and/or sells men's and women's clothing and accessories. (FAC ¶ 2.) Defendant sells its clothing and accessories to consumers in California and throughout the nation. (FAC ¶ 2.)

Neiman Marcus offers upscale apparel, accessories, jewelry, beauty and decorative home products and operates 41 stores across the United States. (FAC ¶ 7.) These store operations total more than 6.5 million gross square feet with over $400 million in sale revenues in 2013. (FAC ¶ 7.) Defendant also operates thirty six Last Call clearance stores. (FAC ¶ 8.) These Last Call Stores are an alternative way for large retail companies to capture a larger pool of consumers because they offer clothing and accessories at discounted prices from in-demand retail stores. (FAC ¶ 8.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 14-07155 SJO (JPRx)          DATE: March 2, 2015

Outlet stores are a popular avenue for sale-seeking consumers because in-demand retail stores, such as Neiman Marcus, will often sell clothes that are "after season" or clothing that had very little popularity and did not sell. (FAC ¶ 9.) To mitigate any more losses on the clothing, the retail stores will sell this clothing at various outlet malls for a discount. (FAC ¶ 9.) Shoppers have become accustomed to seeing products at outlet stores that once were sold at the traditional retail store. (FAC ¶ 10.) Apparel sales at factory outlets rose 17.8% in 2011, according to some estimates, while apparel sales industry-wide rose a meager 1.4%. (FAC ¶ 11.)

Defendant's use of "Neiman Marcus" in the name of the Last Call Stores caused Plaintiff and other Last Call Store shoppers (also referred to as the "Class") to reasonably believe that the Last Call Stores are outlet stores of traditional Neiman Marcus retail stores and that the Last Call Stores sell "after season" and unsold products that were previously sold at traditional Neiman Marcus retail stores. (FAC ¶¶ 12-13.) Defendant labels its Last Call products with a tag that shows a markedly lower price from the "Compared to" price. (FAC ¶ 14.) Plaintiff and the Class reasonably believed that this "Compared to" price represented the price that the exact same product would be sold at the traditional Neiman Marcus retail store. (FAC ¶ 14.)

Plaintiff and the Class, reasonably relied on the large price differences and made purchases at the Last Call Stores believing that they were receiving a substantial discount on the exact same product that could have been purchased at traditional Neiman Marcus retail stores for the "Compared to" price. (FAC ¶ 15.) Plaintiff, like other putative Class members, was lured in, relied on, and damaged by these tactics carried out by Defendant. (FAC ¶ 15.) Defendant's Last Call products are actually not for sale at the traditional Neiman Marcus stores as the "Compared to" pricing strategy suggests but rather are manufactured strictly for sale at the Last Call Stores. (FAC ¶ 16.) These Last Call products are of inferior grade and quality to the products sold at the traditional Neiman Marcus stores. (FAC ¶ 16.) Defendant's price tags on the Last Call products are labeled with arbitrary inflated "Compared to" prices that are purely imaginative because the products were never sold at traditional Neiman Marcus stores and therefore cannot be compared to any price. (FAC ¶ 16.) Thus the insinuated discount is false and misleading. (FAC ¶ 16.)

Due to Plaintiff's and the Class' reasonable belief that the Last Call Store was an "outlet" store they believed that the products were items previously sold at a traditional Neiman Marcus retail store since this is how outlet stores (including Defendant's Last Call Stores) market themselves. (FAC ¶ 17.) Based on this reasonable belief, Plaintiff and the Class further reasonably believed that Last Call products were made of like grade and quality as the products sold at traditional Neiman Marcus stores. (FAC ¶ 17.) The Last Call products made for the outlet stores, however, are not of like grade and quality as the products sold at traditional Neiman Marcus stores, in fact, they are of inferior grade and quality. (FAC ¶ 17.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-07155 SJO (JPRx)         DATE:   March 2, 2015

Defendant's misleading pricing techniques led Plaintiff and the Class to believe the Last Call products were authentic Neiman Marcus products, and in reliance thereon, decided to purchase said products from Defendant's Last Call Store. (FAC ¶ 18.) As a result, Plaintiff and each Class member was damaged in purchasing the Last Call products because they paid for products based on Defendant's representations and perceived discounts, but did not experience any of Defendant's promised benefits shopping at the Last Call Store. (FAC ¶ 18.)

Defendant's misrepresentations regarding the Last Call products and the purported origin of the products led Plaintiff and the putative Class to believe that the Last Call products were of equal quality and sold at the traditional Neiman Marcus retail store before it became an item for sale at the Last Call Store. (FAC ¶ 19.) Further, Plaintiff and members of the Class relied on Defendant's misrepresentations and would not have paid as much, if at all, for the products but for Defendant's misleading advertising and representations. (FAC ¶ 19.)

The Federal Trade Commission has also heard complaints by many members of Congress that see this practice occurring throughout large retail stores. (FAC ¶ 20.) Specifically, the Congressional members state, "it is a common practice at outlet stores to advertise a retail price alongside the outlet store price - even on made-for-outlet merchandise that does not sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)." (FAC ¶ 20.)

Unlike the use of the words "Compared to" in the context of a regular retail store, where a price comparison might suggest the price for similar product sold at a competing store, when used in connection with Defendant's Last Call outlet store, the words "Compared to" can reasonably be interpreted by reasonable consumers to be a price comparison with the price of the exact same product when it was previously for sale at Defendant's regular retail store. (FAC ¶ 21.) Defendant's very name for its outlet stores, "Last Call," reinforces that belief, that is, that the outlet stores are the "last call" for the sale of products previously sold at Defendant's retail stores. (FAC ¶ 21.) Thus, in the context of the Last Call Stores, when Plaintiff and the Class viewed the words "Compared to" next to a price, they reasonable believed that the "Compared to" price was the price the product previously sold at Defendant's retail stores, and not a comparable price simply for goods of a like grade and quality that might be sold elsewhere. (FAC ¶ 21.)

This case was filed in the Superior Court of California for the County of Los Angeles on August 7, 2014, and the complaint was served on August 13, 2014. (*See generally* Notice of Removal.) The case was removed to this Court on September 12, 2014. The original complaint was dismissed on December 12, 2014. Plaintiff's First Amended Complaint, filed December 22, 2014, brings claims for violation of California false advertising law, California unfair competition law, and the Consumer Legal Remedies Act. (*See generally* FAC.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 14-07155 SJO (JPRx)          DATE:   March 2, 2015

In the instant Motion, Defendant contends that the Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) because Plaintiff lacks standing, provides inadequate pleadings, and fails to state a claim. (*See generally* Mot.)

II.   DISCUSSION

    A.   Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). In evaluating a motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ileto*, 349 F.3d at 1200. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To plead sufficiently, Plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) demands that "when averments of fraud are made, the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotations omitted). Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged, setting forth "what is false or misleading about a statement, and why it is false." *Id.* (citation omitted). A complaint that fails to meet these standards will be dismissed. *Id.* at 1107.

The heightened particularity requirements of Rule 9(b) apply to state-law "false advertising" claims under statutes such as the UCL, CLRA and FAL. *See, e.g., Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). The Court determined in its December 12, 2014 Order that Rule 9(b) applies here, and there appears to be no reason to deviate from that determination now.

    B.   Reasonable Consumer Test

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: **CV 14-07155 SJO (JPRx)**  DATE: **March 2, 2015**

The UCL prohibits any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The CLRA similarly prohibits "unfair methods of competition and unfair or deceptive acts or practices," such as "[r]epresenting that goods . . . have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have." Cal. Civ. Code § 1770(a)(5). To state a claim under the UCL or CLRA, "one need only show that members of the public are likely to be deceived." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quoting *Bank of the West v. Super. Ct.*, 833 P.2d 545, 553 (Cal. 1992)) (internal quotation marks omitted). To determine whether members of the public are likely to be deceived, courts apply a "reasonable consumer" standard. *Davis*, 691 F.3d at 1161; *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Davis*, 691 F.3d at 1162 (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006)). The reasonable consumer analysis requires that advertisements be "read reasonably and in context." *Freeman*, 68 F.3d at 290.

Plaintiff brings claims under the following paragraphs of the CLRA:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . .
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (9) Advertising goods or services with intent not to sell them as advertised.
>
> (13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

Cal. Civ. Code § 1770(a). (*See* FAC ¶ 53.)

Plaintiff's UCL and CLRA claims allege that Defendant's misleading pricing techniques, advertising, and misrepresentation mislead consumers that clothing of identical quality would have been sold at flagship Neiman Marcus stores. (FAC ¶¶ 18-19, 42-44.) However, Plaintiff's First Amended Complaint still does not allege with particularity what marketing techniques were used, other than the "Compared To" price tag and the "Last Call" name, or how any of Plaintiff's marketing techniques falsely suggested that the "Last Call" stores sold the same clothing as flagship stores. (*See generally* FAC) The Court, then, is left to determine whether a reasonable consumer would be misled by a "Compared To" price tag on a garment at a store entitled "Last Call" into believing that the flagship store previously sold identical garments at the listed price.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: **CV 14-07155 SJO (JPRx)**     DATE: **March 2, 2015**

Plaintiff cites the FTC's Guides Against Deceptive Pricing ("Guides"), 16 C.F.R. § 233, and the Court finds this a useful guide to how a reasonable consumer might interpret a price tag. (*See* FAC ¶ 20.) The Guides distinguish between "former price comparisons," "retail price comparisons," and "comparable value comparisons." Former price comparisons indicate that the retailer formerly offered the good at the listed price, and are indicated by language such as "Formerly sold at $___" or "Were $10, Now Only $7.50!" 16 C.F.R. §§ 233.1(b)-(c). Other language to indicate a former price includes "Regularly," "Usually," "Formerly," or "Reduced to." 16 C.F.R. §§ 233.1(e). Retail price comparisons indicate that the same article is sold by other merchants at a particular price, and are indicated by language such as "Price Elsewhere $10, Our Price $7.50" or "Retail Value $15.00, My Price $7.50." 16 C.F.R. §§ 233.2(a)-(b). Comparable value comparisons merely indicate that merchandise of "like grade and quality" are sold by the advertiser or others in the area at the listed price, and can be indicated by language such as "Comparable Value $15.00." 16 C.F.R. §§ 233.2(c).

Plaintiff argues that, because of the alleged implication that a "Last Call" outlet store is the "last call" for the sale of products previously sold at Defendant's retail store, a consumer would believe that "Compared to" means that the product was previously sold at the listed price at a flagship store, contrary to the FTC's guidance. (FAC ¶ 21.) But again, there is no evidence that Plaintiff advertised that its "Last Call" stores sold merchandise previously for sale at the flagship stores. (*See generally* FAC.) "Last Call" could just as easily refer to the last call for merchandise from a prior season or the last call for a third-party manufacturer's clearance items.

Plaintiff still claims that Last Call's price tags were essentially a former price comparison, indicating that Neiman Marcus flagship stores sold the same goods at the listed price. However, the price tags, with their "Compared To" language, would most likely be interpreted by a reasonable consumer as a comparable value comparison. *See* 16 C.F.R. §§ 233.2(c). Thus, the "Compared To" price tags are not sufficient to support Plaintiff's UCL and CLRA allegations. Plaintiff's FAC further alleges that Defendant's omissions violate the UCL, but Plaintiff again fails to identify any specific omissions. (FAC ¶ 48.) Nor is any other evidence provided to substantiate Plaintiff's UCL and CLRA allegations. Accordingly, the Court dismisses Plaintiff's second and third causes of action with leave to amend.

///
///
///
///

       C.     <u>False Advertising Law</u>

Plaintiff also brings claims under California's False Advertising Law ("FAL"):

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 14-07155 SJO (JPRx)          **DATE:** March 2, 2015

> It is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

Cal. Bus. Prof. Code § 17500. Further, the FAL provides that:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. Prof. Code § 17501.

As discussed above, the facts as pleaded in the First Amended Complaint are still not sufficient to support allegations that Defendant used misleading advertising techniques or improperly advertised a former price. Accordingly, the Court dismisses Plaintiff's first cause of action with leave to amend.

III.     RULING

For the foregoing reasons, the Court **GRANTS** Defendant's Motion. Plaintiff's Complaint is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff shall have fifteen days to file an amended complaint, and Defendant shall have fifteen days thereafter to respond.

IT IS SO ORDERED.