KIRTLAND & PACKARD LLP
Michael Louis Kelly - State Bar No. 82063
Behram V. Parekh - State Bar No. 180361
Joshua A. Fields - State Bar No. 242938
2041 Rosecrans Avenue, Third Floor
El Segundo, California 90245
Telephone: (310) 536-1000
Facsimile: (310) 536-1001
E-mail: mlk@kirtlandpackard.com
bvp@kirtlandpackard.com
jf@kirtlandpackard.com

*Counsel for Plaintiff and all others similarly situated*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA RUBENSTEIN, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE NEIMAN MARCUS GROUP LLC, a Delaware Limited Liability Company, and DOES 1-50, inclusive, <br><br> Defendants. | CASE NO.: 2:14-cv-07155-SJO-JPR <br><br> CLASS ACTION <br><br> **DECLARATION OF BRIAN BERGMARK IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** <br><br> Assigned To: Hon. S. James Otero <br><br> Date: November 13, 2017 <br><br> Time: 10:00am <br><br> Courtroom: 10C |

I, Brian Bergmark, hereby declare:

1. I have been retained by counsel for Linda Rubenstein ("Plaintiff") to provide financial, economic and damage analysis pertaining to the above-referenced matter. Unless otherwise indicated, the following is set forth based on my own personal knowledge, and if called upon to testify, I would do so competently. This Declaration is offered in connection with Plaintiff's motion for class certification. As such, it focuses on the methodologies I will use to reach my final opinions in this matter once all data and other relevant information is available to me and demonstrates the extent to which these methodologies will give rise to opinions that will apply on a classwide basis.

2. I am a Managing Director and one of the Founders of Torrey Partners, an economic and accounting services firm, whose services include providing independent expert testimony and analysis and strategic consulting services to clients including corporations, law firms, and local, state and federal governments and agencies. I am licensed in the State of California as a Certified Public Accountant. I am accredited in Business Valuation by the American Institute of Certified Public Accountants and as a Senior Appraiser by the American Society of Appraisers. I attended the University of California at Los Angeles (Bachelor of Science, Economics-Systems Science graduate), and San Diego State University (Master of Business Administration, emphasis in Finance). My curriculum vitae, which summarizes my professional and educational background, is attached hereto as **Exhibit A**.

3. During my professional career, I have provided economic loss, damage analysis, valuation and consulting services for international accounting and consulting firms and local accounting firms and businesses since 1984. Since 1989, my work has focused on providing economic loss, damage quantification, and valuation analysis in litigation and non-litigation matters involving businesses and individuals. I have previously performed a number of analyses of

economic losses addressing issues similar to those raised in this matter.

**Scope:**

4. At this time, I have been asked to review deposition testimony and documents provided by The Neiman Marcus Group, LLC ("Defendant"), to explain the methodologies I will apply to a complete set of data and documents and to provide preliminary observations regarding that data and documents which may be relevant to the claims and remedies in this matter.

**Information Considered to Date:**

5. In connection with my analysis and for purposes of this declaration, I, and representatives from Torrey Partners working under my supervision, have reviewed and relied upon various documents and information provided to me related to this matter, including:

    a. The Second Amended Complaint;

    b. The Third Amended Complaint;

    c. Amended Notice of Deposition of Defendant The Neiman Marcus Group, LLC;

    d. Ninth Circuit Memorandum;

    e. The deposition transcripts of Frank Crisci, Rebecca Hall and Jeffrey Rosenfeld; and

    f. Various product information documents by vendor and style

6. A summary of the information I have considered to date is shown at **Exhibit B**.

**Preliminary Observations and Analysis:**

7. Based on the information I have been provided, I am able to provide the following observations that may be relevant to establishing class membership,

liability and/or calculating damages or restitution in this case.

*Identification of Transactions Included in the Class*

8. I can identify which transactions are included in the class by identifying: the date of the transaction; the items sold; the store location at which the transaction was processed; any coupon code that may be provided; and other relevant factors which the Court may determine defines the transactions that are part of the class. I can mechanically and systematically perform this analysis for each and every transaction, customer, and product once sales data for these transactions is provided by Defendant.

9. Per the Third Amended Complaint, filed September 11, 2017, "Defendant's Use of "Neiman Marcus" in the Name of its "Neiman Marcus Last Call" Stores Together with its "Compared to" Price Tag Misled Consumers into Believing that the Last Call Stores Sell Products that were Previously Sold at Neiman Marcus Retail Flagship Stores for the "Compare to" Price."

10. Based on my review of the information I have been provided and my conversations with counsel for Plaintiff, I understand that the transactions that are the subject of this matter involve products purchased by individuals from Neiman Marcus Last Call Stores ("Last Call Store(s)" or "Last Call") in California that were labeled with a "Compared to" price but were never sold at Neiman Marcus flagship retail stores. Such transactions occurred at any time beginning four (4) years prior to the initial filing of this action on August 7, 2014 and continuing through the present date.

11. Plaintiffs allege that, despite the suggestion made by "Compared to" pricing indicated on all Last Call products that items sold at Last Call Stores are at some point offered for sale at Neiman Marcus flagship stores, Defendant's Neiman Marcus Last Call products are actually not for sale at the traditional Neiman Marcus flagship stores. Plaintiffs further allege that the "Compared to" prices are

4

labeled with "arbitrary inflated" prices because the products were never sold at traditional Neiman Marcus stores.

12. I understand that there are generally two ways Last Call stores receive products to be sold. There are direct purchase products were never sold at Neiman Marcus flagship stores and then residue product that comes from Neiman Marcus full-line stores, which is product left over at the end of a year or season or cycle that didn't sell at a full-line store[1].

13. Mr. Crisci further testifies that all items sold at Last Call stores have a price ticket that reflects a "Compared to" price[2] and the price ticket is already attached to the product prior to the product actually reaching the brick and mortar Last Call store.

14. Mr. Crisci indicates that all "Compared to" pricing information is established by and received from the vendor. Vendors establish "Compared to" prices,[3] and Neiman Marcus does not provide any instruction to the vendor on how to calculate the "Compared to" price[4]. Last Call product buyers establish the actual retail price of items sold at Last Call stores[5]

15. It is clear from Mr. Crisci's testimony that the "Compared to" prices are not derived from the actual sales prices of the items over a given period of time, and for direct purchase items, the "Compared to" prices are not derived from sales of the same product in Neiman Marcus flagship stores.

---

[1] Deposition of Frank Crisci taken August 29, 2017; page 28, line 12

[2] Deposition of Frank Crisci taken August 29, 2017; page 6, line 10

[3] Deposition of Frank Crisci taken August 29, 2017; page 26, line 8; page 11, starting line 5

[4] Deposition of Frank Crisci taken August 29, 2017; page 11, starting line 5

[5] Deposition of Rebecca Hall Taken August 29, 2017; page 17, line 16

*Ability to Expand Analysis to All Relevant Data*

16. In other matters, I first analyzed a sample of data related to the subject transactions for purposes of certifying the class. After the class was certified, I was provided with complete data for all transactions within the class description, which included tens of millions of transactions involving thousands of different products. From my work on other matters, I am quite familiar with the type of data retailers collect and maintain, and I believe that I can perform the same type of analysis here as I did in other matters, regardless of the size, scope and amount of sales data at issue.

17. While certain transaction data may be limited, I understand that particular transaction details are commonly captured. Such data includes what items were purchased, what price, other attributes, payment type[6]. To the extent that information is unavailable for a given period of time, the known transaction detail could be extrapolated to the class.

**Damages:**

18. Using the data that I expect to be provided by the Defendant, I can perform various analyses of the damages sustained by (and/or restitution owed to) all members of the Class in this matter. There are several alternative theories by which damages or restitution could be calculated.

19. For example, Ms. Rubenstein could ask for the entire amount she spent to purchase any item from a Last Call store as restitution. Given similar sales data for all class member purchases, I could perform the same analysis on behalf of the entire class and for each class member individually because I would expect the transaction data to contain both the purchase price of an item and a description of the item purchased.

---

[6] Deposition of Jeffrey Rosenfeld taken August 29, 2017, page 15, line 3

20. Alternatively, Ms. Rubenstein could be provided with the entire amount spent to purchase any item from a Last Call store, less a reduction to reflect her use of the product. Pursuant to this theory, Ms. Rubenstein would be entitled to her purchase price minus a form of "depreciation". Given similar sales data for all class member purchases, I could perform the same analysis on behalf of the entire class and for each class member individually because I would expect the transaction data to contain both the purchase price of an item and a description of the item purchased.

21. This potential theory of calculating restitution takes into account the relative utility that the class member received for the product. Although other approaches may be applicable and easy to calculate, one way to determine the utility received for product would be to apply a depreciation factor. Once the reasonable life of the product is determined and the time period over which the product was used by class member is identified, that utility could be determined.

22. I understand from the deposition transcripts I have reviewed that customers often use coupons and other discounts as payment for Last Call products. The use of such coupons should not affect the above calculations concerning the original Item price. However, in determining actual damages under the restitution theory, only the cash (or cash equivalent) actually paid by a customer should be included as consideration. Thus, if coupons were used, damages would be limited to total payment after coupons.

23. A potential third theory of calculating restitution would be to determine the amount of the discount promised (e.g. 35% off the Compared to price) and apply that discount to the price actually paid for that particular product by other customers over the previous 90 days. Under this scenario, if the product was sold to other customers over the previous 90 days for $10.00, and Plaintiff purchased the product for $9.00, and expected a 35% discount the damages would be the difference between the $9.00 purchase price and $6.50 ($10.00, less 35%),

or $2.50 ($9.00 - $6.50). Even though in this example I have referenced an average sales price for the 90 day period leading up to the date of the transaction. I could easily use a different time frame and metric (e.g., median) to determine the comparable price. I would use an average price when the data does not have significant outliers.

24. Given similar sales data for all class member purchases, I could perform these same analyses on behalf of the entire class or for each class member individually.

25. A potential fourth theory of calculating restitution would be to calculate the profits received by Last Call stores for the products purchased. This profit information should be readily available to Defendant, and it should be contained in its financial statement or other accounting data.

26. The above examples are not meant to be exhaustive of the potential means by which I could calculate classwide damages or restitution, but simply demonstrate that such calculations are possible based upon a systematic and mechanical analysis of data maintained by Last Call for every relevant product during the class period.

27. Each of the above calculations is consistent with methods used to identify damages in other matters for which I have been retained to quantify economic damages.

28. Given Last Call's pricing practices, I would expect that there would be fluctuations in the amount of restitution or damages owed to each class member depending on the products purchased and the time period when they were purchased. Such fluctuation, however, would not cause any difficulty in my ability to quantify the damages to the class as a whole or on an individual basis for each class member, all of which can be done based on purely objective evidence and mechanical methodologies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this 12th day of September, 2017 in San Diego.

_/s/ Brian Bergmark_

Brian Bergmark
Managing Director
Torrey Partners, LLC