KIRTLAND & PACKARD LLP
Michael Louis Kelly - State Bar No. 82063
mlk@kirtlandpackard.com
Behram V. Parekh - State Bar No. 180361
bvp@kirtlandpackard.com
Joshua A. Fields - State Bar No. 242938
jf@kirtlandpackard.com
1638 South Pacific Coast Highway
Redondo Beach, California 90277
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

*Counsel for Plaintiff Linda Rubenstein
and the Settlement Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA RUBENSTEIN, on behalf of herself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE NEIMAN MARCUS GROUP LLC, a Delaware Limited Liability Company, and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. 2:14-CV-07155-SJO-JPR<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Assigned to the Hon. S. James Otero<br><br>Date: Oct. 1, 2018<br>Time: 10:00 a.m.<br>Courtroom: 10C |

# TABLE OF CONTENTS

## Contents

I.    INTRODUCTION ................................................................................................ 1

II.    HISTORY OF THE LITIGATION ................................................................. 3

A.  Background .......................................................................................................... 3

B.  Procedural History.............................................................................................. 3

C.  The Settlement Process ..................................................................................... 4

III.    THE PROPOSED TERMS OF THE SETTLEMENT .............................. 5

A.  The Settlement Class.......................................................................................... 5

B.  Monetary Consideration: a $2,900,000 Settlement Payment ................... 5

C.  Injunctive Relief.................................................................................................. 6

D.  Dissemination of Notice to the Settlement Class ........................................ 6

E.  Service Award And Attorneys' Fees And Expenses.................................... 6

F.  Release, Judgment and Continuing Jurisdiction .......................................... 6

IV.    ARGUMENT...................................................................................................... 7

A.  General Final Approval Standards .................................................................. 7

B.  The Settlement is Fair, Reasonable and Adequate ..................................... 8

    1.  Counsel Fairly and Honestly Negotiated the Settlement ...................... 8

2.  The Parties Negotiated with Full Knowledge of the Strengths and Weaknesses of the Case ........................................................................................... 9

3.  Strength of Plaintiff's Case ............................................................................ 10

4.  The Risk of Maintaining a Class Action Throughout Trial .............................. 11

5.  The Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief ....... 11

6.  The Amount Offered in Settlement .................................................................. 14

7.  The Experience and Views of Counsel ............................................................ 15

8.  The Presence of a Governmental Participant .................................................. 16

9.  The Reaction of the Class ............................................................................... 16

10. Review For Collusion Or Other Conflicts Of Interest...................................... 19

11. Review Of Potential Cy Pres Distribution....................................................... 20

V.   CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Austin v. Pa. Dep't of Corrections*,
   876 F. Supp. 1437 (E.D. Pa. 1995) ........................................................ 16

*Briseno v. Conagra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) .................................................................. 6

*Caldera v. J.M. Smucker Co.*,
   2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) ...................................... 13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir.2004) ...................................................... 8, 17, 18

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ...................................................................... 9

*Dennis v. Kellogg Co.*,
   697 F.3d 858 (9th Cir. 2012) ........................................................... 19, 20

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................................. 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................7, 14, 16

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................. 8, 19

*In re Mego Financial Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................... 12, 14

*In re Orthopedic Bone Screw Prods. Liab.Litig.*,
   176 F.R.D. 158 (E.D. Pa. 1997) ............................................................ 16

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................... 15

*In re Warner Communications Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ................................................. 8, 9, 10

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ............................................................. 14

*Linney v. Cellular Alaska P'ship*, C-96-3008 DLJ,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ...................................... 15

*McDonald v. Chicago Milwaukee Corp.*,
   565 F.2d 416 (7th Cir. 1977) ................................................................ 8

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) .......................................................... 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)................................................ 11, 12, 15

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982).................................... 7, 8, 14

*Oppenlander v. Standard Oil Co.*,
   64 F.R.D. 597 (D.Colo. 1974) .......................................................... 12

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ............................................................ 19

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................. 7, 10, 11, 16, 17

*Rubenstein v. Neiman Marcus Grp, LLC*,
   687 F. App'x 564 (9th Cir. 2017) ........................................................ 4

*Russel v. Kohl's Dep't Stores, Inc.*,
   2015 WL 12748629 (C.D. Cal. Dec. 4, 2015)...................................... 13

*Satchell v. Fed. Exp. Corp.*, No. C,
   03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007).................. 20

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................... 7

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .......................................................... 19

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) .................................................................. 8

**Rules**

Fed. R. Civ. P. 23(e)(2) ........................................................................7

FRCP 23(b)(2) and (3)...........................................................................5

FRCP 30(b)(6) .......................................................................................4

FRCP Rule 23 ........................................................................................3

FRCP Rule 23(e).....................................................................................1

**Other Authorities**

A CONTE & H. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11:50 at 155 (4th ed. 2002) ...............................................................................................11

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.40 at 451 (2d ed. 1985) .................................................................................8

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ...............................................................................................7

Manual for Complex Litigation (Fourth) § 21.62 ................................11

## I.   **INTRODUCTION**

Pursuant to FRCP Rule 23(e), plaintiff Linda Rubenstein ("Plaintiff") respectfully requests this Court grant final approval of the proposed settlement ("Settlement") reached in this action between herself, on behalf of the Settlement Class, and defendant The Neiman Marcus Group LLC ("Defendant" or "Neiman").

After extensive negotiations and the benefit of Plaintiff's Counsel's prosecution efforts over four years, Plaintiff and Defendant entered into the Settlement Agreement[1]. Under the Settlement's terms, a settlement fund comprised of the Gross Settlement Amount of $2,900,000 in cash was created for the benefit of the Settlement Class, and Neiman agreed to injunctive relief.

On May 21, 2018, the Court granted preliminary approval of the Settlement, and approved notice dissemination to the Settlement Class, setting a final approval hearing date of October 1, 2018. (D.E. 114)  The Claims Administrator has now implemented the Court-approved notice procedure. (*See* Andrew W. Oxenreiter Declaration ("Oxenreiter Decl."))  The direct notice reached more than 92% of Known Settlement Class Members, and the supplemental notice for Unknown Settlement Class Members reached an estimated 80% of its target audience (855,000 individuals determined to have shopped at Last Call during the Class Period or have similar attributes to such shoppers), thus satisfying due process. (*See* Oxenreiter Decl., ¶24)

This Settlement provides a meaningful recovery in the face of significant risks of litigation, is fair, reasonable, adequate, and meets all relevant approval criteria. Class Counsel vigorously litigated the claims for almost four years before settlement. Class Counsel, who are highly skilled and experienced in consumer and complex litigation, engaged in substantial motion practice, including an appeal to the Ninth Circuit, and conducted significant discovery. Class Counsel acted

---

[1] All capitalized terms used herein shall have the same meanings as forth in the Settlement Agreement, at Docket Entry ("D.E.") 111-3, Exhibit A.

intelligently in the settlement negotiations, reaching the best possible relief for the Class.

The Settlement was negotiated in good faith and at arms' length by lawyers thoroughly familiar with the merits and risks associated with continued litigation. Moreover, the Settlement's fairness and adequacy is evidenced by the fact it was reached with the assistance of the Hon. Carl West (Ret.) ("Mediator"), a well-respected mediator and retired judge. Finally, out of more than 650,000 Settlement Class Members who received direct notice, and hundreds of thousands more estimated to have received supplemental notice, only four Settlement Class Members requested exclusion, and only one Settlement Class Member submitted an objection. (*See* Oxenreiter Decl., ¶29; Fields Decl., ¶ 23, Ex. B)

Each Participating Settlement Class Member shall be entitled to recover from the Net Settlement Fund, which cannot be less than $1,592,425.59.[2]  The claims review process is ongoing, but the currently estimated recovery range for Settlement Class Members is between approximately $77.50 (for those that did not submit any proof of purchase) and $775.00 (for those that submitted $1,400 or more in proof of purchases).  Neiman also agreed to significant injunctive relief regarding the challenged practices, subject to Court approval of the Settlement, which includes a transition to "Comparable Value" references on Last Call price tags in California and online, in place of "Compared to," disclosures regarding the new term's meaning, and training of employees. (*See* Frank Crisci Declaration ("Crisci Decl."); Settlement Agreement §4)

---

[2] The Net Settlement Fund is the Gross Settlement Amount of $2,900,000 minus Claims Administrator Fees and Expenses (not to exceed $400,000), and minus awards the Court may grant Plaintiff and Class Counsel. The fees motion, filed and made available on the Settlement Website on August 6, 2018, sought fees not to exceed $870,000 plus costs of no more than $32,574.41, and a Settlement Class Representative Payment not to exceed $5,000. (D.E. 116)

## II.     HISTORY OF THE LITIGATION

### A.     Background

In August 2014, Plaintiff brought this action pursuant to FRCP Rule 23 on behalf of herself and all others similarly situated, seeking to represent all California purchasers of products at Neiman's Last Call stores or online labeled with a "Compared to" price, but which products were never sold at Neiman's flagship retail stores at such "Compared to" price and/or such products or similar products were not being sold for such "Compared to" price at the time of purchase in the Last Call store's area. (D.E. 69)  Like all Settlement Class Members, Plaintiff purchased "Compared to"-labeled products at Last Call in California. (*See id.*)

### B.     Procedural History

As more fully laid out in the Fields Declaration, Class Counsel, Kirtland & Packard LLP ("K&P") began investigating Plaintiff's claims against Neiman in July 2014 and filed Plaintiff's original class action complaint in L.A. Superior Court. Neiman removed the action to this Court then moved to dismiss Plaintiff's complaint, which Plaintiff opposed. K&P then prepared and filed a motion for class certification, to meet Local Rule 23-3's deadline, which was later taken off calendar. On December 12, 2014, this Court dismissed Plaintiff's complaint with leave to amend. Thereafter, K&P prepared and filed a first amended complaint ("FAC"), Neiman filed a motion to dismiss plaintiff's FAC, which Plaintiff opposed, and on March 2, 2015, this Court dismissed Plaintiff's FAC with leave to amend. K&P prepared and propounded written discovery to Neiman, and thereafter, prepared and filed a second amended complaint ("SAC"). Neiman filed a motion to dismiss plaintiff's SAC, which Plaintiff opposed. K&P also reviewed Neiman's written discovery responses and its document production, and prepared and filed a renewed class certification motion. Shortly thereafter, this Court dismissed Plaintiff's SAC without leave to amend. (Fields Decl., ¶¶ 10-11)

Plaintiff appealed the SAC's dismissal to the Ninth Circuit. After full briefing and oral argument, the Ninth Circuit reversed the dismissal. *See Rubenstein v. Neiman Marcus Grp, LLC*, 687 F. App'x 564 (9th Cir. 2017).

Thereafter K&P served and responded to additional written discovery, reviewed responsive documents produced by Neiman, and conducted investigation of the underlying claims. K&P also engaged in several lengthy meet and confer discussions with Neiman's counsel regarding discovery. (Fields Decl., ¶¶ 12-13)

On August 18, 2017, K&P sought leave to file Plaintiff's third amended complaint ("TAC"), which was granted. The TAC was filed on September 11, 2017. K&P also took FRCP 30(b)(6) depositions of Neiman on multiple topics, involving three separate witnesses in Dallas, Texas. On September 12, 2017, K&P filed Plaintiff's second renewed class certification motion. K&P thereafter took and defended multiple depositions, including expert depositions. Plaintiff then filed her reply brief, and the class certification motion was taken under submission. (Fields Decl., ¶ 14)

### C.    **The Settlement Process**

In or about June 2017, counsel for the Parties had begun discussing the scope of potential damages and whether a class action settlement was possible. Ultimately, Plaintiff and Neiman agreed to mediate the issues. The parties engaged in settlement discussions, which included numerous telephonic calls, exchanges of relevant information, submission of mediation briefs, and an in-person mediation session with the Mediator on August 4, 2017, which did not result in a settlement. After Plaintiff's pending class certification motion was fully briefed on December 4, 2017, the parties participated in a second in-person mediation session with the Mediator on December 7, 2017, with discussions ongoing thereafter. On December 13, 2017, the parties agreed to preliminary settlement terms. After months negotiating final, detailed settlement terms, the parties fully executed the Settlement Agreement on April 18, 2018. (Fields Decl., ¶ 15)

## III.   THE PROPOSED TERMS OF THE SETTLEMENT

### A.   The Settlement Class

The Parties' Settlement Agreement proposed certification of a Settlement Class pursuant to FRCP 23(b)(2) and (3) consisting of:

> All natural persons who purchased one of more products advertised with a "Compared to" price, where such purchase was made from August 7, 2010 through the date of the Preliminary Approval Order, at any of Neiman's Last Call stores in California or on Last Call's e-commerce website if the purchaser provided a California billing address.

(D.E. 111-3, Ex. A, Settlement Agreement at pp. 3, 5)[3]

### B.   Monetary Consideration: a $2,900,000 Settlement Payment

The proposed Settlement Agreement provides for a Gross Settlement Amount of $2,900,000. Participating Class Members are entitled to obtain payment from the Net Settlement Fund, which cannot be less than $1,592,425.59.

The proposed Settlement provides proposed Settlement Class Members substantial benefit: a cash payment to each qualifying participant from a portion of the Net Settlement Fund. Each Authorized Claimant is assigned points to be divided by the total points of all Authorized Claimants. The quotient is the percentage of the Net Settlement Fund each Authorized Claimant will receive. One point is given for filing a claim without proof of purchase, with additional points available based upon the dollar value of Proof of Purchase provided.[4]   Essentially, each Authorized Claimant receives a proportional share of the Net Settlement Fund, based on whether any Proof of Purchase was submitted, and if so, the total amount of purchases made at California Last Call Stores or online. No reversionary

---

[3]The parties agreed to modify the Settlement Agreement so the Class Period ends on the Preliminary Approval Order date rather than upon Final Approval.
[4] Section 3.5(a) of the Settlement Agreement (at pages 11-12) details the point allocation and payment distribution processes. *See* D.E. 111-3, Ex. A.

interest to Neiman exists as to any amount of the Gross Settlement Fund as the entire fund will be distributed to Authorized Claimants.[5]

### C.   Injunctive Relief

As part of the Settlement, Neiman agreed to significant injunctive relief, subject to Court approval of the Settlement, involving modifying the challenged practices as fully detailed in the Crisci Declaration. (*See* Crisci Decl.; Settlement Agreement § 4)

### D.   Dissemination of Notice to the Settlement Class

Direct notice reached an estimated more than 92% of Known Settlement Class Members, and supplemental notice for Unknown Settlement Class Members reached an estimated 80% of the target audience (855,000 individuals determined to have shopped at Last Call during the Class Period or have similar attributes to such shoppers), exceeding the due process requirements generally accepted in the Ninth Circuit.  *See, e.g. Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017); Oxenreiter Decl., ¶ 24)

### E.   Service Award And Attorneys' Fees And Expenses

By separate motion, Class Counsel applied for a Service Award for Plaintiff consisting of a $5,000 payment. (*See* Rubenstein Declaration in Support of Plaintiff's Motion for Award of Attorney's Fees (D.E. 116-6; "Rubenstein Decl.")). Class Counsel also applied separately for: (1) an award of attorney's fees of 30% of the Gross Settlement Amount, and (2) reimbursement of litigation expenses in the amount of $32,574.41. (*See* D.E. 116)

### F.   Release, Judgment and Continuing Jurisdiction

If final approval is granted, Settlement Class Members who have not opted-

---

[5] As of August 20, 2018, the Claims Administrator had received 10,845 timely Claim Form submissions, and the claims review process is ongoing. (Oxenreiter Decl., ¶ 28)  Plaintiff will provide exact information regarding the number of Claimants and average and median awards for Participating Settlement Class Members, in supplemental briefing at the time her reply papers are due.

out will be deemed to have released Defendant of all claims asserted or that could have been asserted in the litigation as a result of the entry of Final Judgment. The Court will retain jurisdiction with respect to the implementation and enforcement of the Settlement's terms, and all parties agree to submit to the Court's jurisdiction for purposes of implementing and enforcing the Settlement.

## IV.   ARGUMENT

### A.   General Final Approval Standards

The law favors settlement, particularly in class actions and complex cases where substantial resources can be conserved by avoiding the costs and rigors of prolonged litigations. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution."); ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("by their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise").

A proposed class action settlement may be approved if, after allowing absent class members opportunity to be heard, the Court finds the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When assessing a settlement:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

The Ninth Circuit has held the determination necessarily involves balancing several factors which may include, among others, some or all of the following:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of

maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.

*In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004)).

The Ninth Circuit, however, also limits district court inquiries as follows:

the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what <u>might</u> have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (citations omitted, emphasis in original).[6]

## B.   The Settlement is Fair, Reasonable and Adequate
### 1.   Counsel Fairly and Honestly Negotiated the Settlement

In evaluating the propriety of a proposed settlement, courts often look to settlement's negotiating process to determine whether that process was genuinely adversarial. *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). A settlement's fairness depends in part on "whether the settlement was achieved through 'arm's-length negotiations' by counsel who have the experience and ability…necessary to effectively represent the class' interest." *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985). Typically, an initial presumption a proposed settlement is fair and reasonable exists when it came from arm's-length negotiations between counsel. *See* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.40 at 451 (2d ed. 1985).

---

[6] Class members need not obtain all that they may have desired or hoped, or even what they might be entitled to if the case were fully litigated. "[T]he inherent nature of a compromise is to give up certain rights or benefits in return for others." *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 429 (7th Cir. 1977).

The Settlement is the result of such arm's length negotiations by experienced counsel through the use of a respected mediator. (*See* Fields Decl. ¶¶ 3-8,15, Ex. A)  Although Neiman agreed not to oppose K&P's request of not more than 30% of the common fund, the Settlement Agreement also provides it is not conditioned in any way on the Court's approval of attorney's fees and costs. (D.E. 111-3 at § 3.3)

Because the Gross Settlement Amount does not revert to Neiman regardless of Court-awarded fees, Neiman had no real interest in supporting or opposing K&P's fees and costs request. During settlement discussions, the Gross Settlement Amount was agreed to prior to any discussion of attorney's fees, and the inclusion of the provision allowing K&P to request up to 30% of the Gross Settlement Amount in fees without opposition was primarily intended to cap any potential fee request. (Fields Decl., ¶ 16)

## 2. The Parties Negotiated with Full Knowledge of the Strengths and Weaknesses of the Case

"'[T]he stage of the proceedings and the amount of discovery completed'" is a factor courts consider in determining whether the settlement is fair, reasonable and adequate. *In re Warner Comm's Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The Parties completed significant discovery, including written discovery, production and review of documents, and substantial deposition discovery of both fact witnesses as well as experts. (*See Supra*, at 3:11-4:15)  Finally, the Parties fully briefed class certification, which was pending for hearing before this Court at the time settlement was reached.

The Parties' legal and factual positions had been extensively briefed during the motions to dismiss, appeal, and fully-briefed class certification motion. The Parties also submitted mediation briefs to the Mediator setting forth further analysis of their legal positions. During settlement discussions, the Parties also

asserted those arguments favoring their respective cases, which they would assuredly have pursued at trial. (*See* Fields Decl., ¶ 15)   Given the discovery conducted and frank exchange of views at mediation, Class Counsel believed "[t]he parties certainly [had] a clear view of the strengths and weaknesses of their cases."*Warner Comm's*, 618 F. Supp. at 745; *Rodriguez*, 563 F.3d at 967.

### 3.    Strength of Plaintiff's Case

Neiman has raised, and would continue to raise, challenges to the claims' legal and factual bases. Neiman has contended, among other things, Plaintiff cannot meet her burden to certify a class, because, according to it, reliance and alleged deception are not common issues, and require individualized determinations. Separately, Neiman has contended Plaintiff cannot prove individual or classwide damages, and that it will prevail on summary judgment against Plaintiff's claims on that basis.

Although Plaintiff continues to believe in her claims, Plaintiff acknowledges risks associated with class certification, and also risks of losing on the merits. The most significant risk is a Court may reject Plaintiffs' damages models, individual or classwide, as has happened in other cases. The Parties differ as to Plaintiff's likelihood of ultimately prevailing after judgment and appeal; however, it is apparent the proposed class had very significant risks in continuing to litigate the action.

By contrast, the proposed Settlement immediately provides the certainty of valuable benefit to proposed Settlement Class Members. The proposed Settlement offers all proposed Settlement Class Members a portion of the price of items they purchased advertised as having a "Compared to" price. If the case is not settled, it would necessitate continuing to prosecute the litigation through class certification, trial and, even if successful there, through an almost certain appeal. Even if Plaintiff eventually succeeds, there is still the certainty that if the case proceeds in litigation, any benefits to the proposed class would be delayed for many years.

The Settlement Agreement, like all settlements, strikes a balance between the maximum possible recovery the proposed Settlement Class might obtain by pursuing litigation to the very end, and the risk of failing to obtain any recovery should Neiman prevail. In determining whether the terms of the Settlement Agreement are sufficiently fair, reasonable, and adequate, the Court need only inquire whether the consideration provided to the proposed Settlement Class as the Gross Settlement Amount and the injunctive relief falls within a reasonable settlement range by "considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Rodriguez*, 563 F.3d at 965, citing Manual for Complex Litigation (Fourth) § 21.62. The answer is most certainly "yes."

### 4.     The Risk of Maintaining a Class Action Throughout Trial

Although the Court did not rule on the class certification motion, it was fully briefed and taken under submission at the time of the settlement. Neiman vigorously disputed certification of any class was appropriate. Plaintiff believes she would have been able to certify a class, but even if Plaintiff was ultimately successful, a district court may decertify a class at any time. *See Rodriguez,* 563 F.3d at 966 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). In negotiating the Settlement, Plaintiff took into account the class certification uncertainty and believes in light of the risks, the Settlement is fair, reasonable, and adequate. (D.E. 116-6, Rubenstein Decl., ¶¶ 14-17; Fields Decl., ¶¶ 17-22)

### 5.     The Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (*quoting* A CONTE & H. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11:50 at 155 (4th ed. 2002)). Courts consider "the vagaries of litigation

1  and compare the significance of immediate recovery by way of the compromise to
2  the mere possibility of relief in the future, after protracted and expensive
3  litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (quoting
4  *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D.Colo. 1974)).

5       The Gross Settlement Amount of $2,900,000 in cash *now* substantially
6  outweighs the mere possibility of potentially larger future relief, particularly when
7  weighed against the possibility of a smaller recovery or no recovery at all. The
8  proposed Settlement, while offering substantial consideration and injunctive relief,
9  does not provide Plaintiff and the Settlement Class the full measure of relief that
10 would be sought at trial. On the other hand, the Settlement provides Plaintiff and
11 the Settlement Class with far more than Defendant would have been willing to
12 offer absent the vigorous prosecution of the claims to date.

13      In determining whether the amount of the settlement is fair, the Ninth Circuit
14 has suggested the Court should compare the settlement amount to the parties'
15 "estimates of the maximum amount of damages recoverable in a successful
16 litigation." *In re Mego Financial Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir.
17 2000). Plaintiff believes a particularly straightforward and appropriate method for
18 calculating damages involves a purchase price refund minus depreciation model.
19 (Fields Decl., ¶ 17)  Based on the purchase price refund minus depreciation model,
20 and given the class period length, Plaintiff calculated an absolute best case scenario
21 recovery (100%) of class-wide damages obtained at trial for putative class
22 members could possibly amount to as much as $120 million. This model, however,
23 would *require* the return of the purchased product to Neiman, an onerous
24 undertaking unlikely to be successful in practice. Without such product return, the
25 dollar amount for damages would be just a fraction of that $120 million. Under the
26 Settlement, however, Class Members are entitled to *retain* their purchases,
27 therefore significantly discounting the additional benefit potentially received at
28 trial by the Class Members of even this calculation. (*Id.*)

According to Neiman, however, the best-case scenario Plaintiff presents above is drastically inflated, because it contends no damages exist at all. Neiman contends applicable damages, if any, could only be determined from the price Plaintiff and putative class members paid for Last Call products measured against the value they received. However, Neiman contends this proposed calculation results in *zero dollars* in damages because Last Call customers chose to purchase the "Compared to" items precisely at the prices paid. Given other results on this issue in similar cases in this Circuit, a reasonable likelihood exists Neiman could prevail on its damages defenses, and Plaintiff would neither recover any damages nor certify a damages class. *See, e.g. Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014) (rejecting damages model, stating "the true value of the products to consumers likely varies depending on individual consumer's motivation for purchasing the products at issue.");*Russel v. Kohl's Dep't Stores, Inc.*, 2015 WL 12748629, at *6-7 (C.D. Cal. Dec. 4, 2015) (declining to certify monetary damages class).

Although Plaintiff contends she and members of the putative class have been deceived and are entitled to a full refund of the purchase price were the action to be litigated, Plaintiff acknowledges it is unlikely such a damages model would be adopted given the proffered defenses. Thus, in the settlement context Plaintiff believes a realistic, conservative method for evaluating damages is but a fraction of the purchase price refund minus depreciation model. Neiman's contention that the value Last Call purchasers receive is essentially the same to the products' purchase prices also makes estimating the appropriate value of any discount difficult from Plaintiff's perspective. Considering no Settlement Class Members has to return items purchased under the proposed settlement, each retains whatever value the products have or had in addition to the value obtained through this settlement. Lastly, given the experience with other class action litigation, only a small percentage of Class Members were anticipated to claim the value offered even

were the case to have proceeded to trial, as is typical in these types of settlements (and has proven to be true during the claims process for this settlement). (Oxenreiter Decl., ¶ 28)   The $2,900,000 Gross Settlement Amount constitutes valuable consideration and is fair and reasonable given the risks of further litigation and the potential damages recovery at trial.  Additionally, Neiman agreed to substantial injunctive relief including changes in practice and robust disclosures, which provides significant additional relief that may not have been obtainable at trial. (*See* Crisci Decl.; Settlement Agreement §4)

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement." *Mego*, 213 F.3d at 458; *See Hanlon*, 150 F.3d at 1026. The additional and substantial expense incurred if this case were litigated further would most assuredly reduce the Settlement Class's net recovery. Moreover, delay, not just at the trial stage, but through post-trial motions and the appellate process, could cause Settlement Class members to wait years for any recovery, further reducing the value of any potential recovery. Even had Plaintiff prevailed at class certification, summary judgment, and trial, Neiman would likely have appealed any decision. Thus, had litigation continued, any recovery would have been many years away.

### 6.    The Amount Offered in Settlement

In assessing the consideration class members obtained in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. A proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery to the class at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Given the inherent risks of litigation, the Settlement is certainly adequate and provides a substantial recovery to each Settlement Class Member. The Net Settlement Fund, which cannot be less than $1,592,425.59, will provide each

Settlement Class Member a payment determined by a point system based on purchase prices, including tax, of the Qualifying Purchases made, and whether Proof of Purchase was provided. (*See* D.E. 111-3, Ex. A, §3.5 for detailed description of calculation methodology)  Based on the point system calculation, the currently estimated recovery range for Settlement Class Members is from $77.50 (for those with no proof of purchase) up to $775.00 (for those with $1400 or more in proof of purchase). (Fields Decl., ¶ 24)  This is, by any standard, valuable consideration.

### 7.  The Experience and Views of Counsel

In assessing the adequacy of a settlement's terms, the trial court is entitled to and should rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural Telecomms. Coop.,* 221 F.R.D. 523 at 528; *In re Pacific Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.")  When evaluating the proposed settlement, the trial court, absent fraud or collusion should be hesitant to substitute its own judgment for counsel's. *See Nat'l Rural Telecomms. Coop.,* at 528.

Class Counsel's experience suggests the Settlement is a strong result for the proposed Class and warrants the Court's approval.[7]  Class Counsel's support for the proposed settlement confers a presumption of correctness. *See  Linney v. Cellular Alaska P'ship,* C-96-3008 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998) ("involvement of experienced class action counsel and the fact [] the settlement agreement was reached in arm's length

---

[7] Class Counsel are experienced class action litigators who have successfully litigated numerous complex consumer protection class action cases in the past. (*See* Fields Decl., ¶¶ 3-8, Ex. A)  K&P is a full service law firm founded in 1932 specializing in complex litigation, class action, and mass tort. The lead attorneys from the firm on this matter, Behram V. Parekh and Joshua A. Fields, personally brought broad class action litigation experience to the case. (*Id.*)

negotiations, after relevant discovery had taken place create a presumption [] the agreement is fair."); *In re Orthopedic Bone Screw Prods. Liab.Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997), *quoting Austin v. Pa. Dep't of Corrections*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interests of the class.'")

Given Class Counsel's experience, their opinion that the settlement is fair and adequate confers a presumption of correctness. *See  Rodriguez*, 563 F.3d at 965 ("This circuit has long deferred to the private consensual decision of the parties," citing *Hanlon*, 150 F.3d at 1027).  After weighing the risks and benefits associated with litigating this case further, Class Counsel reached the opinion the proposed settlement is in the Settlement Class's best interests. (*See* Fields Decl., ¶¶ 17-22)   The Gross Settlement Amount of $2,900,000 and corresponding Net Settlement Fund of at least $1,592,425.59 represents substantial recovery for Settlement Class Members, particularly in light of Neiman's proffered defenses on damages.

### 8.    The Presence of a Governmental Participant

The Ninth Circuit has acknowledged that where a class "does not have the benefit […] of previous litigation between the defendant[] and the government" and a number of "serious hurdles" remain that may prolong the litigation, this factor favors approval of the settlement. *Rodriguez*, 563 F.3d at 966.  Here, no governmental agency had previous litigation against Defendant that may have benefitted the Settlement Class. This lawsuit was brought solely based on Class Counsel's and Plaintiff's investigation. (Rubenstein Decl., ¶¶ 3-11; Fields Decl., ¶ 11)

### 9.    The Reaction of the Class

Out of the more than 650,000 Settlement Class Members who received direct notice, and all Unknown Settlement Class Members who received Publication Notice, and over 10,000 claims received, only four requested

exclusion, and only one Settlement Class Member objected. (*See* Oxenreiter Decl., ¶¶ 29, 30)  Courts consistently find favorable reactions to settlements even when significantly more objections exist.[8]

The sole objection Settlement Class Member Pauline Pomerance submitted is based on what appears to be a fundamental misunderstanding regarding the Settlement's terms, and should be denied. (*See* Fields Decl., ¶ 23, Ex. B)  Ms. Pomerance refers to the Settlement as a "scam settlement that most [c]onsumers will be unable to respond to" because it "asks that consumers *prove* their claim by submitting receipts for the last ten years!"  (*Id.*)  (Emphasis added)  In fact, the Settlement Agreement contains no requirement that Settlement Class Members must submit receipts to make a claim; instead, it provides Settlement Class Members may make claims by simply declaring under penalty of perjury they made Qualifying Purchases. (D.E. 111-3 at pp. 4-5, defining "Proof of Purchase")  Upon preliminary review, the *vast majority* of claimants (over 7,000) made claims in this fashion, that is, without submitting receipts. (*See* Fields Decl., ¶ 24)  If a Settlement Class Member did submit receipts or other qualifying Proof of Purchase with their claim (such as a credit card statement, which may be relatively easily obtained), their settlement recovery's value was significantly enhanced, per the Settlement Agreement. (D.E. 111-3, Ex. A, §3.5)  No receipt requirement exists, and Ms. Pomerance's contention that "[v]ery few people will be able to respond to this" settlement for that inaccurate reason is mistaken.  (Fields Decl., ¶ 23, Ex. B)

Ms. Pomerance's objection is also based on an inaccurate reading of the Settlement Agreement's attorney's fees provision. Based on her inaccurate assertion receipts are required so "[v]ery few people will be able to respond…," Ms. Pomerance incorrectly claims "thus most of the funds will go to the attorneys.

---

[8] *Rodriguez*, 563 F.3d 967 (affirming class action settlement approval where there were 54 objections out of 376,301); *Churchill Village*, 361 F.3d at 577 (affirming class action settlement approval where there were 45 objections out of 90,000).

1  Thus, the only people who will benefit from this will be the attorneys." (*Id.*)  As
2  the Settlement Agreement (D.E. 111-3), Notice, and Plaintiff's Motion for
3  Attorney's Fees (D.E. 116) all make clear, however, Class Counsel seek their fee
4  recovery under the percentage-of-the-fund method (30% in this instance). Thus,
5  the number of Settlement Class Members making valid claims has no effect on the
6  attorney's fees Class Counsel may obtain, as Ms. Pomerance mistakenly contends.

7       Further, Ms. Pomerance's concerns about the claims process, which she
8  believes was concocted to "substantially reduce eligible class members," have
9  actually not come to fruition. (Fields Decl., ¶ 23, Ex. B)  Ms. Pomerance suggests a
10 hypothetical wherein "only 100 class members respond". (*Id.*)  In fact, more than
11 10,000 Claim Forms were submitted, demonstrating unequivocally Ms.
12 Pomerance's concerns did not come true. This renders Ms. Pomerance's concern
13 that the "proposed settlement has no method for dealing with a small number of
14 class members who submit claims" inapplicable under the actual circumstances of
15 the claim process. (*Id.*)

16      Ms. Pomerance's last complaint in the objection about the value of the
17 Settlement to Participating Settlement Class Members is also misguided and
18 actually *supports* the Court's final approval of the Settlement. Ms. Pomerance
19 complains that "[a] much better settlement would be if you send all class members
20 a gift certificate for $100 off their next purchase." Ms. Pomerance elaborates that
21 "Class members will surely use that, since they have obviously shopped at
22 Neiman's before, *and $100 is a real benefit*." (*Id.*)  (Emphasis added)  The claims
23 review process is ongoing, but while the exact final number of valid claims cannot
24 be presently determined, a current estimate, albeit subject to change, is that based
25 on the point allocation system, the range of *cash* recoveries for Settlement Class
26 Members will be between an estimated $77.50 and $775.00, depending on the
27 number of calculated for a particular claimant. (Fields Decl., ¶24)   These
28 recoveries are in line and in many instances will be significantly greater than the

$100 "real benefit" Ms. Pomerance's objection proposed. (Fields Decl., ¶ 23, Ex. B)  Further, while Ms. Pomerance assumes Settlement Class Members would happily spend a $100 gift certificate at Neiman, a reasonable inference is most if not all Settlement Class Members would prefer cash, to spend anywhere, rather than being solely limited to Neiman.

### 10.    Review For Collusion Or Other Conflicts Of Interest

When a proposed settlement is negotiated prior to class certification, the Ninth Circuit has emphasized the district court should also scrutinize the settlement for subtle signs of collusion or conflicts of interest.  *In re Bluetooth*, 654 F.3d 935 at 946; *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). The Ninth Circuit has indicated the following signs may indicate that class counsel may have allowed pursuit of their own self-interests to infect negotiations:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
> (2) when the parties negotiate a "clear sailing" arrangement providing for payment of attorneys' fees separate and apart from class funds; or
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth*, 654 F.3d at 947. None of those signs are present here. Class Counsel will be paid from the same Gross Settlement Amount as Settlement Class Members, and so had every reason to negotiate the largest fund possible, and their fee will be determined by the Court. Class Counsel do not seek a disproportionate distribution – the fee application is limited to 30% of the fund (plus expenses), which is within the typical range for attorney's fee awards in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Any portion of the requested fee not awarded to Class Counsel will remain part of the Net Settlement Fund, and will not revert to Defendant. (*See* D.E. 111-3, Ex. A, at §3.5)

Further, given the extensive litigation conducted to date, including the Ninth Circuit appeal, both sides demonstrated by their actions they were prepared

to litigate this case through final judgment, if no acceptable resolution could be reached. In short, there can be no question of any collusion. Settlement negotiations were a long, drawn out process over months, utilizing the Mediator's expertise. *See Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.")

### 11.   Review Of Potential Cy Pres Distribution

The Settlement Agreement provides for a *Cy Pres* distribution only of any residual sum of any settlement checks not cashed within 90 days of the issuance date to the charity designated by the Parties: Public Counsel. (*See* D.E. 111-3, Ex. A, at §3.5) The Parties believe this will be an insignificant portion of the Gross Settlement Amount. However, the Court must inquire "whether the distribution of the approved class settlement complies with [Ninth Circuit] standards governing *cy pres* awards." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011); *Dennis*, 697 F.3d at 865. The Ninth Circuit has held that any *cy pres* must be "'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and (3) must not benefit a group 'too remote from the plaintiff class.'" *Dennis*, 697 F.3d at 865, quoting *Nachshin*, 663 F.3d at 1039. Here, the Parties' proposed *cy pres* recipient meets all three Ninth Circuit criteria. *Dennis*, 697 F.3d at 865. Public Counsel provides legal services to underserved communities. *http://www.publiccounsel.org/about_us?id=0001* (last visited August 30, 2018). Its Consumer Law Project focuses on consumer protection. *See http://www.publiccounsel.org/practice_areas/consumer_law* (last visited August 30, 2018).

## V.   <u>CONCLUSION</u>

Plaintiff respectfully requests the Court approve the proposed Settlement as fair, reasonable and adequate and enter final judgment in the case.

Dated: August 31, 2018

Respectfully Submitted,

**KIRTLAND & PACKARD LLP**
Michael Louis Kelly
Behram V. Parekh
Joshua A. Fields

By: /s/ Joshua A. Fields

1638 South Pacific Coast Highway
Redondo Beach, CA 90277
Phone: (310) 536-1000
Fax: (310) 536-1001

*Counsel for Plaintiff Linda Rubenstein and the
Settlement Class*

KIRTLAND & PACKARD LLP
LAW OFFICES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE
[CCP §§1010.6, 1011, 1013, 1013a, 2015.3; CRC 2.260, 2.306]
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1638 South Pacific Coast Highway, Redondo Beach, California 90277. I am "readily familiar" with my employer's practice of collection and processing of correspondence and documents for mailing with the United States Postal Service, mailing via overnight delivery, transmission by facsimile machine, and delivery by hand.

On August 31, 2018, I served a copy of each of the documents listed below by placing said copies for processing as indicated herein:
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

(✓) **U.S. MAIL:**  The correspondence or documents were placed in sealed, labeled envelopes with postage thereon fully prepaid on the above date and placed for collection and mailing at my place of business to be deposited with the U.S. Postal Service at El Segundo, California on this same date in the ordinary course of business.

**PERSONS OR PARTIES SERVED:**

Objector:
Pauline Pomerance
18914 Carmel Crest Drive
Tarzana, CA 91356

(✓) (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Marti F. Clark

02474-00002  176888.01                    -2-
PLAINTIFF'S ***